IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA SINGLETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-230 Erie |
| ) | |
| v. ) | |
| ) | |
| JO ANNE BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

McLAUGHLIN, SEAN, J.

Plaintiff, Linda Singleton, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security, who found that she was not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Singleton protectively filed an application for SSI on August 26, 2002, alleging that she was disabled since January 5, 1995 due to fibromyalgia, head and back problems (AR 519-526).  Her application was denied initially, and she requested a hearing before an administrative law judge ("ALJ") (501-505, 508).  A hearing was held on February 9, 2004, and following this hearing, the ALJ found that Singleton was not disabled at any time through the date of his decision, and therefore was not eligible for SSI benefits (AR 422-432, 445-479).  Singleton's request for review by the Appeals Council was denied (AR 414-417), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision.  Presently pending before the Court are cross-motions for summary judgment.  For the reasons set forth below, we will deny the Plaintiff's motion, and grant the Defendant's motion.

## I. Background[1]

Singleton was born on March 31, 1971, and was 33 years old at the time of the ALJ's decision (AR 426). She had a high school equivalency diploma, and past relevant work experience as a secretary, office worker, and nurse's aide (AR 426).

Singleton has a history of back pain and disc herniation dating back to 1995 (AR 781). In addition, in November 2000 she fell and suffered a T4 compression fracture (AR 781). On July 25, 2002, Singleton was seen by her treating physician, Garrett W. Dixon, M.D., a physiatrist (AR 772-773). Singleton reported continuing pain in the upper and lower trunk, with intermittent pain and numbness radiating to her left upper extremity (AR 772). Lower extremity burning persisted, but in a patchy distribution (AR 772). She managed household chores with breaks as needed, but did not vacuum or carry laundry (AR 772). She reportedly walked regularly at her own pace (AR 772). Medication prescribed by another physician had helped her concentration, and she was relying primarily on Tylenol for pain control, but had Vicodin and Ultram if she needed something (AR 772).

On physical examination, Dr. Dixon found tenderness but no spasms in the following areas: cervical paraspinals bilaterally; trapezius muscles; pectoralis muscles; levator scapulae; scapular muscles bilaterally; thoracic spinous processes and adjacent paraspinal muscles, mostly in the mid-thoracic region; lumbar paraspinals bilaterally; gluteus muscles over the sacroiliac joints; and in the piriformis regions on deep palpation (AR 772). Motor examination revealed 4/5 strength, 2/4 reflexes and her sensory examination was normal (AR 772). Dr. Dixon diagnosed cervical pain, thoracic compression fracture, low back pain, lumbar disc herniation at L5-S1, and fibromyalgia (AR 773). He opined that she remained about the same, and had been fairly stable (AR 773). Her current medications were working adequately, and he recommended that she continue her activities as tolerated (AR 773).

---

[1] Singleton has filed at least two prior applications for benefits which were denied, and there is no indication that she appealed these adverse decisions (AR 425). Her last application was denied by an ALJ on June 28, 2002 (AR425). The ALJ here found that the June 28, 2002 decision was *res judicata* as to Singleton's current application (AR 425). Singleton concedes that the only period of time at issue in this case is from June 28, 2002 forward. *Plaintiff's Reply Brief* p. 9. Consequently, we have limited our discussion of the medical evidence accordingly.

On September 10, 2002, Singleton was seen by Michael Matthews, Jr., M.D., for follow-up of post-concussion syndrome (AR 785-786). He reported that since he had last seen her on June 7, 2002, she had another accident, when "horseplay" led to her falling down a hill, striking her head and breaking some ribs (AR 785). She reported losing consciousness for several seconds, but twenty minutes later she had some vomiting and disorientation (AR 785). Dr. Matthews indicated that other than that incident, she had considerable improvement over the post-concussion syndrome she presented with on January 3, 2001 (AR 785). He reported dramatic improvement in her concentration since beginning Provigil, and although she was not back to normal, she had no paraphasic errors and she slept well (AR 785).[2] She had only intermittent dizzy, light-headed sensations, occurring perhaps twice a week lasting ten to fifteen minutes, but these sensations were less intense than they were formerly (AR 785). Singleton no longer had out-of-body experiences and her headaches had lessened considerably (AR 785). She retained a tight sensation in her back and chest with occasional left arm and right lower extremity pain, and her back was sore at the location of the T4 fracture (AR 785).

On physical examination, Dr. Matthews reported that her speech, language and affect were normal, she was dressed appropriately and well groomed (AR 785). Her cervical range of motion was full, and extraocular movements were intact without saccadic substitution for smooth pursuit (AR 785). Her gait was normal, Romberg was absent, tandem walking was done well, heel and toe station was normal, and finger-to-nose movements were done without tremor (AR 785). Her sensory examination showed normal vibration sensitivity in the DIP joints of the first finger, mid arm and thigh, and cold sensation was symmetric and normal (AR 786). Dr. Matthews assessed Singleton with good symptomatic improvement of post-concussion symptoms with Provigil and time (AR 786). He indicated that she could continue the Provigil, and since she was stable, he released her from his care (AR 786).

Progress notes dated September 25, 2002 from the Mind and Body Wellness Center reflected that Singleton received massage therapy on a weekly basis (AR 841). Terry Hemlock, Physical Therapist, stated that Singleton reported that her stiffness and soreness had markedly

---

[2]"Paraphasia" is the misuse of spoken words or word combinations. *See Taber's Cyclopedic Medical Dictionary* p. P-23 (13th ed. 1977).

decreased, and that the burning sensation in her legs had almost resolved (AR 841). Her home exercise program was helping, and she used a TENS unit on a fairly regular basis (AR 841). Ms. Hemlock reported that her current level of pain ranged from a four to a ten out of ten, with less ten pain overall (AR 841).

Ms. Hemlock reported on October 18, 2002 that although Singleton's condition was chronic and her pain level could elevate to an eight or a ten, her pain level dropped considerably following therapy, and her severe pain had decreased overall (AR 837).

On November 6, 2002, a state agency reviewing consultant reviewed the medical evidence of record and concluded that Singleton could perform light work (AR 495-500).

Singleton returned to Dr. Dixon on January 24, 2003 and reported that she was sore and stiff (AR 871). She complained of pain in the upper and lower trunk, pain and numbness radiating to the left upper extremity, persistent lower extremity burning, but in a patchy distribution, localized tenderness in the upper trunk muscles, and almost constant muscle stiffness (AR 871). She continued to use Vioxx as well as Ultram on occasion, which were fairly effective in easing her pain (AR 871). She continued her usual household chores (AR 871). There was no reported change in her physical examination, and Dr. Dixon's diagnosis remained the same (AR 871-872). Overall, Dr. Dixon found that she managed reasonably well and her medications were helpful (AR 872).

Dr. Dixon completed a medical source statement of Singleton's ability to perform work-related physical activity on August 4, 2003 (AR 865-866). Dr. Dixon opined that Singleton could frequently lift and carry two to three pounds and occasionally lift and carry up to ten pounds; stand and walk for one to two hours in an eight-hour workday, with position changes as needed for pain control; sit for two to three hours with position changes as needed; was limited in upper and lower pushing and pulling to short periods, non-exertional; never perform postural activities except for occasional kneeling; and was unable to perform any reaching or handling with sustained forward or overhead reach, particularly on the left (AR 865-866). He further opined that heights were unsafe and that vibration aggravated her pain (AR 866).

When seen by Dr. Dixon on August 12, 2003, Singleton reported pain in the upper and lower trunk, increased burning in the lumbar region, pain and numbness radiating to the left

upper extremity, and lower extremity burning (AR 869). She reported that her medications and weekly visits with a chiropractor helped her pain, and she felt better since being involved in therapy (AR 869). She stated that she swam regularly, and performed light household chores as she was able (AR 869). There was no significant change in her physical examination, and her diagnosis remained the same (AR 869-870). Singleton informed Dr. Dixon that Dr. Thomas felt her dizziness and arm pain was related to C5-6 problems, and Dr. Dixon requested she bring her cervical MRI to the next visit (AR 870). Dr. Dixon opined that Singleton was managing fairly well (AR 870). He encouraged her to remain as active as possible (AR 870).

On October 13, 2003, Singleton reported to Dr. Dixon that she had gone two weeks without taking Vioxx, but "really felt" it (AR 867). She continued to report pain throughout the trunk, neck, thorax and lumbar area (AR 867). Singleton stated that she continued to try and walk, and did her stretching exercises and household chores (AR 867). Dr. Dixon reported that overall, she was managing well and that her current medications remained appropriate and reasonably effective (AR 868). He found no new changes on physical examination, and stated that he did not feel that any new or additional treatment would be of benefit (AR 868). He discussed Singleton's limitations with her, noting that she was frustrated (AR 868). He suggested she keep working at improving her tolerance for exercise and activity (AR 868).

On January 27, 2004, Dr. Dixon stated that there had been no change from his August 4, 2003 assessment of Singleton's abilities (AR 866).

On March 17, 2004, a lumbar spine MRI showed degenerative disc changes at L4-5, and to a greater degree, at L5-S1(AR 879). At the L5-S1 area, there was a midline and bilateral paracentral, right slightly greater than left, disc herniation, thought to be touching the right S1 nerve root within the canal (AR 879). A cervical MRI conducted the same date showed a right-sided protrusion or mild herniation at the C5-6 level, with suspected mild spurring along the right C5-6 uncovertebral joint (AR 880). There was mild flattening of the right ventral surface of the cord, with suspected impact upon the existing right C6 nerve root (AR 880).

Singleton underwent a psychological evaluation performed by Shoukry Matta, M.D., on March 31, 2004 pursuant to the request of the Commissioner (AR 873-878). Singleton reported a history of a fall in 2000 which resulted in a neck injury, T4 compression fracture, disc injuries,

and a concussion (AR 873-874). She continued to have severe aches and pains, but stated that she had learned to deal with it (AR 873). She claimed she worked as a secretary/receptionist for years but was now unable to work due to her previous her injury (AR 873). She reported her current medication was doxepin, which she only took at night when she was in pain and unable to get comfortable (AR 874).

On mental status examination, Dr. Matta reported that Singleton was appropriately dressed, and exhibited good hygiene and eye contact (AR 874). She was cooperative, had a happy and friendly affect, appropriate to thought content and situation (AR 874). Her thought process was spontaneous, goal-directed and relevant with no language impairments (AR 874). She had no obsessions, phobias, delusions or ideas of reference (AR 874). Her memory, intelligence, insight and judgement were all reported as good (AR 875). Dr. Matta noted that she walked slowly with a cane, and stood several times to feel comfortable (AR 874). Singleton reported that she performed stretching exercises (AR 875).

Dr. Matta concluded that Singleton was emotionally sound (AR 875). He noted that her problems were mainly medical in nature, although she had a positive mood and attitude (AR 878). He opined that she was moderately limited in her ability to carry out short, simple, or detailed instructions, but could be extremely limited due to physical constraints, depending upon what was required (AR 877).

Singleton and Noel Plummer, a vocational expert, testified at the hearing held by the ALJ on February 9, 2004 (AR 445-479). Singleton testified that she discontinued driving six months ago since she felt unstable (AR 451). She used a cane to ambulate, wore two back braces daily, and used a TENS unit daily (AR 451, 460, 464). She claimed that since her head injury in November 2000, she suffered from confusion, dizziness, out of body experiences several times per week, poor concentration, and daily headaches (AR 452, 454). She also suffered from back pain which was not alleviated with medication, although it helped her deal with the pain (AR 455-456). She additionally suffered from bowel problems (AR 470). Singleton testified that she was able to walk ten steps before stopping and resting, could stand five to ten minutes, sit for five to ten minutes, lift less than five pounds, and retrieve an item dropped on the floor, but not without pain (AR 456-458). Most of the time she was able to care for her personal needs without

assistance, but a few times a week required assistance with dressing (AR 459, 467).

Singleton testified that she alternated between Vicodin and Ultram for pain, and also used Extra Strength Tylenol (AR 461). She took hot or cold baths approximately two to three times per day (AR 469). She no longer swam, and found no relief in weekly massage therapy (AR 463). She claimed her condition had gradually worsened, and she was unable to perform household chores (AR 463-464). She engaged in no outside or social activities (AR 464). She stated that Dr. Dixon told her that surgery would not be helpful, and recommended that she continue her exercises and engage in activities as tolerated (AR 465, 470).

The vocational expert was asked to consider an individual of Singleton's age, education, and vocational background, who was capable of simple, repetitive type tasks, who must be within close proximity of restroom facilities, who was not able to engage in work on heights or around dangerous machinery due to dizziness and headaches, and was limited to performing sedentary work that did not require repeated bending (AR 472). The vocational expert testified that such an individual could perform the jobs of an assembler, packager, and clerking-type job (AR 472). The vocational expert further testified that such an individual would still be able to perform the identified jobs if she were limited to a sit/stand option (AR 473). Finally, the vocational expert opined that such an individual would not be able to maintain the identified jobs if she were off task for a significant period of time during the day (AR 475).

Following the hearing, the ALJ issued a written decision which found that Singleton was not eligible for SSI benefits within the meaning of the Social Security Act (AR 425-432). Her request for a review by the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 414-417). She subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence

but more than a mere scintilla.  *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

### III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141.  If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.*  If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.  The ALJ resolved Singleton's case at the fifth step.  At step two, the ALJ determined that Singleton had severe impairments, but determined at step three that she did not meet a listing (AR 427).  At step four, the ALJ determined that Singleton had the residual functional capacity to perform sedentary work that did not require repeated bending, which was simple and repetitive, allowed proximity to a bathroom of five minutes, and did not entail working at heights or around dangerous machinery (AR 428).  At the final step, the ALJ determined that she could perform the jobs cited by the vocational expert at the administrative hearing (AR 430).  The ALJ additionally found that Singleton's allegations relative to her functional limitations were not entirely credible (AR 431).  Again, we must affirm this determination unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Singleton first argues that the ALJ erred in agreeing with the state agency's conclusion that she was not disabled within the meaning of the Act, since there was no showing that the state

agency adjudicator was an acceptable medical source pursuant to 20 C.F.R. § 404.1513.[3] *Plaintiff's Brief* pp. 12-13.  While the ALJ may have ultimately agreed with the adjudicator's conclusion that Singleton was not disabled, his decision nonetheless reflects that he engaged in an independent review of the medical records in fashioning Singleton's residual functional capacity ("RFC") (AR 427-428).  Indeed, the ALJ specifically rejected the adjudicator's conclusion that Singleton could still perform light work based on his independent review of the medical record (AR 427-428).  The ALJ comprehensively examined the treatment notes of Drs. Dixon and Matta, as well as the diagnostic studies of Singleton's cervical and lumbar spine (AR 428-429).  He concluded that the weight of the medical evidence did not "reflect clinical findings of abnormality of the severity to show that the claimant could not perform at least a range of sedentary work" (AR 429).   Thus, this is not a situation where the ALJ impermissibly credited a non-medical source's opinion over a medical source one, and, consequently, we find no error in this regard.  *See e.g., Humphreys v. Barnhart*, 127 Fed. Appx. 73, 75-76 (3rd Cir. 2005) (ALJ's limited reliance on non-medical state agency adjudicator's assessment was harmless since it was not the sole basis for his conclusion).

Singleton next claims that the ALJ failed to accord proper weight to the opinion of Dr. Dixon, her treating physician, whose RFC assessment precluded her from performing even a sedentary range of work.  It is well settled in this Circuit that the opinion of a treating physician is entitled to great weight and can only be rejected on the basis of contrary medical evidence.  *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988).  An ALJ must articulate in writing his or her reasons for rejecting such evidence.  *Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981).  In the absence of such an indication, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."  *Id*.  Further, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all."  *Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd Cir. 1993).

---

[3]The functional assessment form completed by the state agency adjudicator does not indicate whether the adjudicator is a medical source (AR 495-500).  "Acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. § 404.1513(a).

Dr. Dixon opined that Singleton could only frequently lift and carry two to three pounds and occasionally lift and carry up to ten pounds; stand and walk for one to two hours in an eight-hour workday, with position changes as needed for pain control; sit for two to three hours with position changes as needed; was limited in upper and lower pushing and pulling to short periods, non-exertional; never perform postural activities except for occasional kneeling; and was unable to perform any reaching or handling with sustained forward or overhead reach, particularly on the left (AR 865-866). He further opined that heights were unsafe and that vibration aggravated her pain (AR 866). The ALJ found that his opinion was inconsistent with the objective medical findings (AR 428). Consequently, he assigned little weight to Dr. Dixon's opinion (AR 428).

The ALJ observed that Dr. Dixon's examinations did not reflect any findings such as severe sensory, motor or reflex loss, muscle atrophy, redness, swelling, heat or persistent spasm (AR 428). He further noted that Singleton's range of motion was still adequate, and Dr. Dixon stated that she was managing fairly well and her medications were working well for her (AR 428). Finally, he found it significant that Dr. Dixon concluded overall she was managing well and her medications were reasonably effective (AR 428).

All of these findings are supported by the record. Dr. Dixon's physical examinations of Singleton were essentially unremarkable. She exhibited 4/5 strength, 2/4 reflexes, and her sensory examination remained normal (AR 772, 868-872). Although she exhibited some tenderness, no spasm was ever noted (AR 772, 868-872). He consistently recommended that Singleton continue activities as tolerated and encouraged her to remain as active as possible despite her symptoms (AR 773, 870, 872). Moreover, we observe that when examined by Dr. Matthews for follow-up of her post-concussion syndrome, he reported that her cervical range of motion was full, her gait was normal, Romberg was absent, tandem walking was done well, heel and toe station was normal, and her sensory examination was normal (AR 786).

We do not agree that the ALJ committed reversible error in rejecting Dr. Dixon's opinion. As noted by the ALJ, a treating source's medical opinion concerning the nature and severity of the claimant's alleged impairments will be given controlling weight if the Commissioner finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in

the record. 20 C.F.R. § 416.927(d)(2); *see also Grandillo v. Barnhart,* 105 Fed. Appx. 415, 418-19 (3rd Cir. 2004) (rejecting treating physician's opinion as inconsistent with his own clinical findings); *Allison v. Barnhart,* 100 Fed. Appx. 106, 109 (3rd Cir. 2004) (same). For the reasons discussed above, the ALJ's rejection of Dr. Dixon's opinion was supported by substantial evidence.

Singleton also claims that the ALJ selectively reviewed the medical evidence in that he cited only to portions which supported his finding that she was not disabled. For example, she faults the ALJ for failing to note Dr. Dixon's continuing diagnosis of cervical pain, thoracic compression fracture, chronic low back pain, lumbar disc herniation at L5-S1, and fibromyalgia. *Plaintiff's Brief* p. 15. By way of another example, she contends that the ALJ's reference to Dr. Dixon's finding that she was "overall, managing well" and that her current medications were "reasonably effective" ignored the remainder of the treatment note, which stated that he did not feel any new or additional treatment would be of benefit, that she was frustrated by her limitations, that she continued to improve her tolerance for exercise and activity, and that he recommended she continue her activities as tolerated (AR 868). *Plaintiff's Brief* p. 16. Singleton claims that these remaining entries were consistent with her stated limitations as well as Dr. Dixon's assessment of her daily activities.

We disagree. Consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every finding contained in a report. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3rd Cir. 2001) (ALJ not required to discuss every treatment note). Moreover, the failure of an ALJ to cite specific evidence does not necessarily establish that such evidence was not considered. *Phillips v. Barnhart*, 91 Fed. Appx. 775, 777 n.7 (3rd Cir. 2004); *Lozada v. Barnhart*, 331 F. Supp. 2d 325, 336 (E.D.Pa. 2004). Indeed, requiring an ALJ to exhaustively address each and every finding in the record would prove too burdensome. As long as the ALJ "articulates at some minimum level [his] analysis of a particular line of evidence," a written evaluation of every piece of evidence is not required. *Phillips*, 91 Fed. Appx. at 777 n.7.

For example, Dr. Dixon's diagnosis of Singleton's impairments is simply not in dispute; the issue is what are her functional limitations as a result of these impairments. Likewise, any failure to specifically mention Dr. Dixon's findings that she was frustrated by her limitations or

11

that he recommended that she continue her activities *as tolerated* does not undercut the ALJ's analysis. To the contrary, Dr. Dixon consistently reported that her medications were effective and he repeatedly encouraged her to remain as active as possible despite her impairments (AR 773, 868, 870, 872). As the ALJ noted, Singleton reported to Dr. Dixon that therapy made her feel better, she swam regularly, and was able to perform light household chores (AR 428).

Finally, Singleton contends that ALJ improperly evaluated the vocational expert's testimony. The law is well established that "[w]hile the ALJ may proffer a variety of assumptions to [a vocational] expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984). In other words, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987), *citing, Podedworny, supra. See also Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150 (3rd Cir. 1983).

Here, Singleton argues that the ALJ's hypothetical relative to her functional restrictions was contrary to Dr. Dixon's RFC assessment, which established that she could not perform any type of gainful work activity, even at the sedentary level.[4] Because we have already determined that the ALJ's rejection of Dr. Dixon's assessment with respect to Singleton's functional limitations was supported by substantial evidence, it was not error for the ALJ to rely on the vocational expert's testimony. We therefore find no error in this regard.

### IV. Conclusion

An appropriate Order follows.

---

[4] Singleton also claims that the ALJ should have included the limitations contained in the consultative examiner's report dated May 1, 2001 (AR 698-706). *Plaintiff's Brief* p. 25. However, as previously indicated, the relevant time period is from June 28, 2002 forward.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA SINGLETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-230 Erie |
| ) | |
| v. ) | |
| ) | |
| JO ANNE BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

AND NOW, this 18th day of April, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 14] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 18] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Linda Singleton. The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin<br>
United States District Judge

cm: All parties of record.